**Ethan Levi**, OSB No. 994255
Email: ethan@lmhlegal.com
**Noah Horst**, OSB No. 076089
Email: noah@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **DIANNE DAVIDOFF**, <br><br> Plaintiff, <br><br> vs. <br><br> **DOLORES MATTEUCCI; LINDSEY SANDE, MONICA BYERS; DAVID HERNE; OREGON STATE HOSPITAL, OREGON HEALTH AUTHORITY**, <br><br> Defendants. | Case No.  6:22-cv-901 <br><br> **COMPLAINT** <br> **Civil Rights Action (42 U.S.C. §§ 1983, 1985)** <br> **Violation of Fourteenth Amendment** <br> **Professional Negligence, Negligence Assault and Battery** <br><br> **Jury Trial Demanded** |

**NATURE OF THE CASE**

This is plaintiff Diane Davidoff's complaint for civil rights violations and claims for

professional negligence against a nurse practitioner, a registered nurse manager, their superiors,

and the Oregon Health Authority (OHA). Defendants were responsible for Ms. Davidoff's care

while she was a patient at the Oregon State Hospital (OSH). Ms. Davidoff was a vulnerable person

who had been committed as guilty except for insane for a life term under the jurisdiction of the

Psychiatric Security Review Board (PSRB). The defendants violated Ms. Davidoff's civil rights and failed in their professional obligations to provide competent, adequate, and professional care to Ms. Davidoff. The defendants failed to provide adequate supervision, training, and safeguards to protect Ms. Davidoff when she relied upon them for her care and wellbeing.

The male registered nurse manager used his position of authority to egregiously flout his professional obligations, bending the nurse-patient relationship to satisfy his own prurient desires. He undermined Ms. Davidoff's therapy by grooming her for a sexual relationship and harassing and assaulting her, destabilized her treatment, and he caused recurring psychological trauma. Defendants and their employees warned Ms. Davidoff that complaining about the abuses she suffered would lead to harsh consequences for her and a longer stay at the Oregon State Hospital.

The first claim is for medical malpractice committed by an OSH nurse practitioner who negligently tried to remove skin tags that proliferated Ms. Davidoff's neck and shoulder. This procedure was incredibly painful and led to permanent scarring and infection. After this botched procedure, Ms. Davidoff told OSH employees she wanted to file a complaint and sue OSH for medical malpractice. OSH employees warned Ms. Davidoff not to complain or it would set back the progress she made in the hospital and would interfere with her ability to transition to a less restrictive setting. This medical malpractice claim is related to her other claims because Ms. Davidoff learned that if she complained about mistreatment by OSH employees responsible for her care and wellbeing at OSH, she might be stuck there forever.

Her second claim is for abuse by a male registered nurse manager who was a member of Ms. Davidoff's treatment team. The nurse manager reviewed Ms. Davidoff's medical history, knew about the medical malpractice committed by the nurse practitioner, and he knew Ms. Davidoff never filed a complaint about it. Instead of treating Ms. Davidoff as he was required to, the nurse manager spent more than a year using sensitive medical information to manipulate and groom her for a sexual relationship. During this grooming process, the male nurse methodically

COMPLAINT - 2
(Case No. 6:22-cv-901)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

read Ms. Davidoff's confidential psychiatric and medical files, learning about her vulnerabilities including the facts and details of the criminal case that brought her to the OSH. He also learned about her forensically documented, idiosyncratic, psychological weaknesses. He used these nuggets and his position of power and control to target and manipulate her. Part of his method was to point to a confidential fact in her file and make Ms. Davidoff feel guilty for it. His barrage of advances and aggressions caused Ms. Davidoff great anxiety and stress and undermined her recovery. Knowing that the nurse manager had sway over the course of her treatment including her potential release, she felt she had no option but to go along with his advances. She knew that to transition to a less restrictive environment she must please him. She knew this because she had already been warned after her botched surgery that if she complained about the simple medical neglect in her first claim, it may ruin her chances to leave the Oregon State Hospital.

## JURISDICTION

This court has jurisdiction over the subject matter of the federal civil rights claim under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

This court has supplemental jurisdiction over the subject matter of the state law claims for release under 28 USC § 1367.

## VENUE

Venue is proper within the District of Oregon because all of the events giving rise to these claims occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all of the acts and practices alleged herein occurred at the Oregon State Hospital Facilities in Junction City, Lane County, Oregon and in Bend, Deschutes County, Oregon.

## PARTIES

1.    Plaintiff, Ms. Davidoff, is a resident of Deschutes County, in the State of Oregon.

2.    At all times mentioned herein, Defendant Dolores Matteucci, was the superintendent of the Oregon State Hospital (OSH). She is ultimately responsible for the care,

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

treatment and safety of patients housed at OSH. As a part of her duties, she reviewed any complaint of misconduct made against any employee of OSH. She is sued here for civil rights violations and negligence in her individual capacity and under color of state law.

3.      At all relevant times, Lindsey Sande was the Deputy Chief Nursing Officer at OSH. She was David Herne's supervisor and employed by OSH. Her duty was to supervise and manage employees including David Herne. Her job was to ensure that David Herne was properly qualified, trained and supervised and that he did his job according to the policies and procedures in place at OSH. Further, Lindsey Sande was responsible for keeping patients safe while ensuring that her employees followed directives and nursing standards of care. Lindsey Sande is sued for the civil rights violations in her individual capacity and under the color of state law.

4.      At all times mentioned herein, Defendant Monica Byers, N.P. was a nurse practitioner employed by OSH and licensed in the State of Oregon. Her duty was to provide professionally competent medical care to the patients at OSH, including Ms. Davidoff. Monica Byers is sued for the civil rights violations in her individual capacity and under the color of state law.

5.      At all times mentioned herein, Defendant David Herne, RN ("Herne") was a registered psychiatric nurse, employed by OSH and licensed in the State of Oregon. His duty was to provide professionally competent mental health care to the patients at OSH including Ms. Davidoff. David Herne is sued for the civil rights violations and assault and battery in his individual capacity and under the color of state law.

6.      At all material times, Defendant OSH was the primary public psychiatric hospital in the State of Oregon. OSH has locations in Salem, Marion County, Oregon and in Junction City, Lane County, Oregon. OSH is responsible for housing, psychiatrically treating, and ensuring the safety and security of all patients committed to its care and is managed under the authority of the OHA.

COMPLAINT - 4
(Case No. 6:22-cv-901)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**TORT CLAIMS NOTICES**

5.    Ms. Davidoff timely sent tort claim notices regarding the state law actions in this case vis-à-vis the COVID-19 state of emergency that began on March 8, 2020. She sent a tort claim notice alleging the acts relating to defendants David Herne and the Oregon Health Authority on March 30, 2022, which the department of administrative services acknowledged and assigned claim number L18175801. She sent a tort claim notice relation to defendants Monica Byers and the Oregon Health Authority on May 12, 2022, which the department of administrative services acknowledged and assigned claim number L18211701.

**FACTUAL ALLEGATIONS**

6.    Ms. Davidoff shot and killed her son in 2015 while experiencing paranoia, hallucinations that her family were supernatural beings (e.g., mermaids, vampires etc.), and hearing voices that told her "'bad things' were going to happen." Ms. Davidoff was arrested and held at the Multnomah County Detention Center (MCDC) where she was sexually assaulted by a guard while in custody. She reported the assault to staff, who dismissed her report due to Ms. Davidoff's psychiatric condition. Ms. Davidoff remained in MCDC custody for the entirety of her trial.

7.    In 2017 Ms. Davidoff was found Guilty Except for Insanity (GEI) for the crime of Murder with a Firearm and Unlawful Use of Weapon – Firearm. As a result of this finding, Ms. Davidoff was placed under the jurisdiction of the PSRB for life. In February 2017, Ms. Davidoff was admitted to the OSH Salem campus, and eventually transferred to the OSH Junction City campus on July 10, 2018.

8.    In late 2019, Ms. Davidoff contacted the medical personnel at Junction City to seek medical care for skin tags or other blemishes on her neck and shoulder. OSH personnel insisted they could remove them in-house. Even though Ms. Davidoff was under a guardianship, OSH never contacted her guardian about this procedure, and nurse practitioner Monica Byers ("Byers")

began treatment. Byers first tried freezing the skin tags off. That did not work, so Byers cauterized Ms. Davidoff's skin tags. This procedure was painful, went terribly, and led to deep wounds and permanent scarring. Ms. Davidoff wanted to file a lawsuit for the injuries she suffered from this negligent medical care at OSH, but during a meeting with her treatment team, social worker Judy Vogelsang told Ms. Davidoff that "moving forward with a lawsuit would impact her being released from the hospital with the PSRB." Over the course of her time at OSH, staff repeatedly told Ms. Davidoff she must meet the expectations of the PSRB to be considered for any type of release. Because of the warnings OSH staff gave her against complaining or filing a lawsuit, and because she was not believed when she had complained about prior mistreatment while in custodial settings, Ms. Davidoff was terrified that making any complaint about her medical care would lead to prolonged detention; she therefore did not file any formal written complaint about the inadequate medical care until submitting her tort claims notice.

9.      Ms. Davidoff has a well-documented history of domestic and sexual abuse including a sexual assault in a custodial setting, and she was given clear warnings from staff at OSH not to report staff misconduct. She knew that her only avenue to relaxed conditions of confinement and eventual release from OSH was compliance with staff members regardless of how they treated her. Within this context, and with full knowledge of her deepest secrets and vulnerabilities, Defendant Herne began to groom Ms. Davidoff into a prohibited sexual relationship to which she was incapable of consent given her confinement. Ms. Davidoff was afraid that rebuffing or reporting Defendant Herne's harassment would anger him and lead to him tightening to the conditions of her confinement; Ms. Davidoff believed that she had to engage him to secure and retain a lower custody level.

10.     Defendant Herne, as part of Ms. Davidoff's treatment team, had access to her medical file which contained information that indicated Ms. Davidoff was particularly vulnerable to sexual abuse. The file included information that she had disclosed being sexually assaulted by

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

a guard at MCDC, had reported the sexual assault, but was not believed because of her psychiatric history and presentation in the jail. The medical file included a recitation of her history of physically and emotionally abusive romantic relationships, and other behavioral coping mechanisms that made her susceptible to further abuse. In fact, Ms. Davidoff's violence risk assessment, generated by her OSH treatment team noted that "[she] poses some risk for future victimization. She has a history of being drawn to antisocial and emotionally unstable romantic partners who may become violent or otherwise abusive to her."

11.     Both Defendant Dolores Matteucci and Defendant Lindsey Sande knew that Defendant Herne had been disciplined previously for sexual harassment. Despite this knowledge, they permitted him to interact with Ms. Davidoff as a nurse manager on her treatment team despite both knowing she was a patient who was vulnerable to sexual abuse.

12.     Before coercing Ms. Davidoff into a prohibited sexual relationship, Defendant Herne accessed Ms. Davidoff's medical files and learned that she was a devout Catholic, information which Defendant Herne, also a Catholic, used deftly to gain her trust. He also learned that Ms. Davidoff had a guardianship and was a ward of the State for shooting her son. Defendant Herne used knowledge about the homicide to guilt and shame her, repeatedly declaring her a bad Catholic and insulting her family, including her dead son. Additionally, Defendant Herne learned about Ms. Davidoff's breast augmentation surgery which she received following breast cancer treatment; Defendant Herne frequently referenced her breasts in explicit messages and ultimately body-shamed Ms. Davidoff for getting the procedure.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

13.     Defendant Herne admitted in a text message to Ms. Davidoff that he targeted vulnerable patients at OSH, messaging:



14.     Defendant Herne would visit with Ms. Davidoff, and no other patient, for hours on end, both in the public area of the Forest 2 Unit and eventually in a quiet room on the same unit. During these visits, Defendant Herne told Ms. Davidoff multiple times that he was attracted to her, commented on her body, shared stories about prohibited relationships he had with other patients, and told Ms. Davidoff about his sex life. Other staff at OSH noticed these intimate visits and discussed it amongst themselves. Defendant Herne knew his actions were wrong and he could lose his nursing license, texting Ms. Davidoff:

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092



15.     In furtherance of his objective to groom Ms. Davidoff into a prohibited sexual relationship, Defendant Herne rewarded Ms. Davidoff special privileges on the Forest 2 Unit, including letting her use his cellphone, which is considered contraband at OSH. With Ms. Davidoff, Defendant Herne would look at lingerie on his phone and showed her pornographic, lewd, and sexual content.

16.     Escalating his behavior to prohibited sexual abuse, Defendant Herne, under the guise of handing Ms. Davidoff paperwork, repeatedly and intentionally brushed against Ms. Davidoff's clothed breasts and squeezed her thigh.

17.     Defendant's actions to engage Ms. Davidoff in a prohibited sexual relationship directly contravene the therapeutic goals for Ms. Davidoff while at OSH. One of her violence risk assessments conducted by a psychologist on June 16, 2019, indicates that Ms. Davidoff's risk for relational violence, something she was actively working to prevent, increases when she is in a high-conflict relationship.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

18.     In March 2020, Ms. Davidoff was sexually harassed by a Mental Health Tech (MHT) named "Alan" in front of other patients. The MHT said to Ms. Davidoff "you have sex hair, and it makes me want to have sex with you." Ms. Davidoff disclosed this sexual harassment during her therapy the next day, and while an official report was made to the Office of Training Investigations and Safety (OTIS) on March 2, 2020, neither Ms. Davidoff nor any other patient who witnessed the interaction were interviewed. No one was ever disciplined but the incident was reported to the unit nurse manager, Joel Meltzer, who did nothing other than file the complaint with OTIS. The following day after the complaint was transmitted to OTIS, Ms. Davidoff received a letter from OSH superintendent Dolores Matteucci that said "the claim was made on Monday, March 2, 2020. After thorough review by OTIS it has been determined that this incident did not meet the definition of Physical Violence and will not be investigated further." The MHT was emboldened by the lack of any investigation and continued to harass and intimidate Ms. Davidoff in front of other staff and patients despite the report. Not only did this harassment remind Ms. Davidoff of other instances of sexual violence in her life, but defendants' failure to transparently process her complaint confirmed to Ms. Davidoff that OSH would never hold their staff members accountable even when the superintendent herself was aware of misconduct. This experience reinforced Ms. Davidoff's fear of retaliation for reporting or rebuffing Defendant Herne.

19.     On December 17, 2020, Ms. Davidoff was released to a Secure Residential Treatment Facility in Bend, Oregon, but Defendant Herne's harassment did not end. At the new facility, Ms. Davidoff received a cellphone and Defendant Herne used his personal and work phone to continue his grooming and harassment by constantly calling and texting Ms. Davidoff on that phone.

20.     The incessant communication from Defendant, documented via text messages and call logs in the thousands, shows that he continued to shame Ms. Davidoff while at the same time telling her he was attracted to her. He shamed her for being a bad Catholic. He shamed her for

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

having breast augmentation surgery. He shamed her for killing her son. However, he also sent her

pornographic messages, asked her to send him pornographic photos of herself, and told her in no

uncertain terms he was attracted to her:





LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

21.    Other explicit and harassing messages Defendant Herne sent Ms. Davidoff include:

 

22.    Defendant Herne sent Ms. Davidoff gifts while she was at the Secure Residential Treatment facility, including two dozen roses on Valentine's Day 2021 and lingerie on another occasion. Defendant Herne repeatedly indicated he wanted a life with Ms. Davidoff after her release, messaging:

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092



23.    Defendant Herne also breached patient confidentiality by revealing sensitive information about Ms. Davidoff, including her reasons for being at OSH, to another patient Ms. Davidoff was close with, to his ex-girlfriend, and he gossiped about Ms. Davidoff to another OSH nurse, Jonathan Zach and Mr. Zach's family. Ms. Davidoff found out about these violations and confronted Herne who became defensive and concerned that Ms. Davidoff may report his inappropriate contact. He threatened Ms. Davidoff that if she complained about him, his sisters, who are both doctors, would testify against her and *she* would get into trouble not him. He also repeatedly told Ms. Davidoff to delete his texts to her. After Herne made these threats, Ms. Davidoff started saving the text messages, in part because Mr. Herne was getting more verbally aggressive and scary with her and would call her 15-20 times in the middle of the night, while he was drinking and while she was sleeping.

24.    Ms. Davidoff told Defendant Herne to stop contacting her in April of 2021, after she was released from the Oregon State Hospital to a Secure Residential Treatment Facility in Bend, Oregon. She recognized the grooming, she depended on him less because now she was no

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

longer at his facility. He did not leave her alone; instead, he started to ask about her family and drive by their home, intimidating Ms. Davidoff and her family. Ms. Davidoff blocked Defendant Herne's numbers on her phone, but he continued to text and call her, acknowledging in a voicemail that he knew she had blocked him and stating, "I love you." The final contact Ms. Davidoff had with Defendant Herne were two voicemails he left on her phone in May 2021.

25.     At all times when Defendant Herne had intimate communication and inappropriate contact with Ms. Davidoff, she was under the jurisdiction of PSRB and confined to a correctional facility. For most of their interactions, Defendant Herne was the administrative program nursing manager supervising Ms. Davidoff's treatment team.

26.     OSH has a policy of reckless indifference to known or suspected sexual abuse and patient abuses that is perpetuated by OSH superintendent Dolores Matteucci and nursing supervisors like Defendant Lindsey Sande. OSH and the defendants created a climate that condoned the physical and sexual abuse of patients by staff members. Staff know that OSH will not investigate reports of abuse by patients and there is a culture of retaliation when abuse reports are made. Ms. Davidoff suffered severe emotional distress in the form of shame, guilt, inability to trust her treatment team, treatment delays, and an inability to engage therapeutically with the treatment due to stress associated with the events described above.

## FIRST CAUSE OF ACTION

### (Professional Negligence – Against David Herne and the OHA)

27.     OHA employed David Herne as a psychiatric nurse manager at the OSH at all relevant times. Plaintiff was a psychiatric patient in defendant's care, and she was a vulnerable person as defined by ORS 430.735. As such, defendants owed plaintiff a duty to provide her with therapeutic mental health and medical care and to protect her from abuse.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

28.    Defendant's employee breached that duty of care by grooming plaintiff, engaging in a prohibited and sexually inappropriate relationship with plaintiff, and telling plaintiff things that were not therapeutically indicated, including:

  a.   Entering multiple relationships with Ms. Davidoff and violating boundaries including but not limited to, being a patient, a friend, and pursuing a sexual relationship and driving by her family's home.

  b.   Discussing his own intimate relationships with Ms. Davidoff, when defendant's employee knew, or should have known, that his conduct would cause Ms. Davidoff severe emotional distress.

  c.   In using information from Ms. Davidoff's medical file to manipulate and pressure Ms. Davidoff into a prohibited sexual relationship.  Including:

    i.   In guilting Ms. Davidoff for the murder of her son, the reason for her confinement at OSH, which Herne knew, or in the exercise of reasonable care should have known, that this conduct would cause Ms. Davidoff severe emotional distress.

    ii.  In using Ms. Davidoff's religious beliefs to induce guilt, shame, and emotional distress which contravened the therapeutic benefits Ms. Davidoff was supposed to gain from treatment at OSH.

  d.   In breaching confidentiality by revealing information about Ms. Davidoff to another patient in Ms. Davidoff's social circle at OSH and other members of defendant's employee's personal network.

  e.   In the context of Ms. Davidoff's deferential relationship with her treatment team, defendant's employee showed and sent Ms. Davidoff sexually explicit material,

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

told Ms. Davidoff that he wanted to have sex with her, that he was attracted to her, and used routine workings at OSH to sexually assault Ms. Davidoff.

    f.   In failing to terminate the relationship and remove himself from Ms. Davidoff's care team when defendant's employee recognized that he was suffering emotional impairment to levels that compromised his ability to practice nursing safely, and these afflictions were destroying any therapeutic relationship that could possibly exist.

29.    Plaintiff suffered stress and emotional suffering because of defendant's employee's negligent mental health care.

30.    But for defendant's employee's conduct, plaintiff would not have been harmed and suffered her damages.

31.    Defendant's employee's conduct fell below the standard of care of a registered nurse in the State of Oregon.

32.    Ms. Davidoff suffered severe emotional distress in the form of shame, guilt, inability to trust her treatment team, treatment delays, and an inability to engage therapeutically with the treatment due to stress associated with the events described above.

## SECOND CAUSE OF ACTION

### (Professional Negligence – Against Monica Byers and the OHA)

33.    Ms. Davidoff realleges and incorporates by reference the allegations in Paragraphs 1-32 above.

34.    Defendant's employee, Monica Byers, was a Nurse Practitioner and medical provider at the OSH in which plaintiff was a patient. As such, she owed a duty of care to plaintiff.

35.    Defendant's employee breached her duty to plaintiff when she failed to use reasonable professional care when she sought to remove plaintiff's skin tags.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

36.     Defendant's employee's acts of negligently removing Ms. Davidoff's skin tags caused Ms. Davidoff, pain, suffering and scarring.

37.     Defendant's employee's acts caused damages to plaintiff by causing pain, suffering, infection, emotional distress, and permanent disfigurement.

## THIRD CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress – Against All Defendants)

38.     Ms. Davidoff realleges and incorporates by reference the allegations in Paragraphs 1-37 above.

39.     Ms. Davidoff having been found GEI was confined by the court to the care of defendants for treatment of her psychiatric illness. She was a vulnerable person who was entitled to special protections as a vulnerable person under Oregon Revised Statute 430.735. Defendants owed Ms. Davidoff a heightened duty of care to protect her from emotional and psychological harm due her confinement, due to their special relationship as her treating psychiatric medical providers, and because of the insight into her vulnerabilities gained from this relationship.

40.     The negligent conduct of defendant Herne infringed on the following legally protected interests held by Ms. Davidoff:

a.      A patient's right to receive treatment free from conduct derogatory to the standards of nursing under ORS 678.111(1)(f) and as defined by the Oregon Administrative Rules (OAR) Chapter 851-045-0070. Including but not limited to:
      i.   Engaging in or attempting to engage in sexual contact with a client in any setting;
      ii.  Engaging in sexual misconduct with a client in the workplace;
      iii. Failing to establish or maintain professional boundaries with a client;
      iv.  Violating the rights of privacy, confidentiality of information, or knowledge concerning the client, unless required by law to disclose such information.

41.     Defendant Herne disregarded and exploited repeated statements in Ms. Davidoff's PSRB file by her psychiatrists that Ms. Davidoff was at risk of relational violence, which had

placed her in OSH, when in a high-conflict relationship. Defendant Herne's degrading, sexually

explicit, and harassing interactions with Ms. Davidoff which targeted her unsafe characteristic thus

foreseeably caused Ms. Davidoff emotional distress including shame, guilt, inability to trust her

treatment team, treatment delays, and an inability to engage therapeutically with the treatment due

to stress associated with the events described above.

## FOURTH CAUSE OF ACTION

### (Negligent Supervision of Defendant Herne – Against the OHA, Lindsey Sande and

### Dolores Matteucci)

42.    Ms. Davidoff realleges and incorporates by reference the allegations in Paragraphs 1-

41 above.

43.    Defendant's employees owed a duty to Ms. Davidoff to exercise reasonable care in

the supervision of its employees.

44.    Defendant's employees, including Dolores Matteucci and Lindsey Sande, placed

defendant Herne in a position where it was reasonably foreseeable that he could injure a patient in

plaintiff's circumstances then breached that duty to by failing to properly supervise Herne in the

following ways:

a.    In allowing Defendant Herne to use his professional position to groom Ms.
Davidoff for sexual contact,
b.    In failing to properly consider Defendant Herne's discipline history and Ms.
Davidoff's vulnerabilities when placing him in charge of her treatment,
c.    In failing to provide sufficient security for patients, including Ms. Davidoff, while
they were interacting with Defendant Herne, giving Defendant Herne access to
make inappropriate sexual contact with patients;
d.    In failing to train and supervise its employees,
e.    In failing to employ cameras in its supervision of its employees,
f.    In failing to view cameras in its supervision of its employees,
g.    In ignoring what they saw going on between staff patients through the cameras,
h.    In failing to create a protocol to monitor the relationships with its employees and
patients,
i.    In willfully ignoring clear violations of restrictions on contact and behavior
permitted between staff and patients,

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

j.      In willfully ignoring clear signs of "grooming" and sexualized behavior by staff towards patients,

k.      In maintaining policies that failed to protect patients including Ms. Davidoff, from inappropriate sexual contact from Defendant Herne and others,

l.      In failing to adequately train Defendant Herne and others to create a safe environment, free from inappropriate sexual contact, leading to the sexual abuse and harassment of Ms. Davidoff,

m.      In failing to investigate claims of misconduct.

45.     As a result of this breach of Defendant's duty to Ms. Davidoff, she suffered severe emotional distress in the form of shame, guilt, inability to trust her treatment team, treatment delays, and an inability to engage therapeutically with the treatment due to stress associated with the events described above.

## FIFTH CAUSE OF ACTION

### (Battery - Against Defendants Herne, Matteucci, and the OHA)

46.     Ms. Davidoff realleges and incorporates by reference the allegations in Paragraphs 1-45 above.

47.     At all times relevant, defendant Herne was acting within the scope and course of his employment with the OHA. Defendant Herne acted with the intent to cause offensive contact with Ms. Davidoff and his actions directly caused offensive contact with Ms. Davidoff.

48.     Defendant Herne was able to engage in such activity because of the power and position given to him by the OHA and Defendant Matteucci and negligent lack of oversight. Ms. Davidoff was unable to consent to such contact.

49.     As a result of defendant's breach, Ms. Davidoff suffered severe emotional distress in the form of shame, guilt, inability to trust her treatment team, treatment delays, and an inability to engage therapeutically with the treatment due to stress associated with the events described above.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

## SIXTH CAUSE OF ACTION

**(42 U.S.C. § 1983 Civil Rights Action for Violation of Plaintiff's 14th Amendment Rights Against Due Process Right to Liberty – Against all Defendants)**

50.     Ms. Davidoff realleges and incorporates by reference the allegations in Paragraphs 1-49 above.

51.     At all times material to this complaint, Defendant Herne acted or purported to act in his individual capacity to perform official duties under color of state law, ordinances, or regulations. Defendant Herne was an employee of OSH, which is controlled by the Department of Human Services (DHS).

52.     Ms. Davidoff had a liberty interest in her bodily integrity, personal security, and freedom from sexual coercion and abuse. Ms. Davidoff also had a liberty interest in a therapeutic care as a vulnerable person deemed Guilty Except for Insanity.

53.     Defendant Herne, acting under color of state law, violated Ms. Davidoff's substantive due process rights protected by the Fourteenth Amendment of the United States Constitution when he deprived Ms. Davidoff of her bodily integrity, interfered with her therapeutic mental health care as described in the paragraphs above, when Ms. Davidoff was in functional and involuntary custody of the OSH.

54.     As a result of this civil rights violation, Ms. Davidoff suffered severe emotional distress in the form of shame, guilt, inability to trust her treatment team, treatment delays, and an inability to engage therapeutically with the treatment due to stress associated with the events described above.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

a.     For judgment in favor of plaintiff against defendants for economic and

noneconomic damages for each Constitutional violation in an amount to

be proven at trial.

b.     For costs and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

1988.

c.     For such other and further relief as may appear just, equitable, and

appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**DATED** this 21st day of June, 2022.

By:     s/ Ethan Levi
**Ethan Levi**, OSB No. 994255
By:     s/ Noah Horst
**Noah Horst**, OSB No. 076089
Attorneys for Plaintiff

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092